## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| RAYMOND MARTINO, *on behalf of himself and all others similarly situated*, <br><br> Plaintiff, <br> vs. <br><br> ONEBEACON INSURANCE GROUP, LTD., T. MICHAEL MILLER, LOWNDES A. SMITH, REID T. CAMPBELL, MORGAN W. DAVIS, LOIS W. GRADY, IRA H. MALIS, G. MANNING ROUNTREE, PATRICK A. THIELE, and KENT D. URNESS <br><br> Defendants. | Case No.: <br><br><br><br> <u>**CLASS ACTION COMPLAINT**</u> <br><br> <u>**DEMAND FOR JURY TRIAL**</u> |

**CLASS ACTION COMPLAINT FOR BREACH OF FIDUCIARY DUTIES AND INDIVIDUAL CLAIMS FOR VIOLATION OF SECTIONS 14(a) AND 20(a) OF THE <u>SECURITIES EXCHANGE ACT OF 1934</u>**

Plaintiff Raymond Martino ("Plaintiff"), on behalf of himself and the proposed Class defined herein, brings this class action suit for violations of Sections 14(a) and 20(a) of the Securities Exchange Act Of 1934. In support of this class action complaint, Plaintiff, by his attorneys, alleges upon information and belief, except for his own acts, which are alleged on knowledge, as follows:

## INTRODUCTION

1. Plaintiff brings this action on behalf of himself and the public stockholders of OneBeacon Insurance Group, Ltd. ("OneBeacon" or the "Company") against the Company and its Board of Directors (collectively, the "Board" or the "Individual Defendants," as further defined below), for violations of Sections 20(a) and 14(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), and Rule 14a-9 promulgated

1

thereunder ("Rule 14a-9"). The Company and the Individual Defendants are referred to herein as "Defendants." Specifically, Defendants seek stockholder votes in connection with the sale of the Company to Intact Financial Corporation ("Intact"), through a proxy statement that omits material facts necessary to make the statements therein not false or misleading. Stockholders require this material information to make an informed vote.

2.      On May 2, 2017, the Company announced that it had entered into an agreement and plan of merger (the "Merger Agreement"), dated April 16, 2017, by which Intact, through its wholly owned subsidiary Intact Bermuda Holdings Ltd. ("Holdco"), and Holdco's wholly owned subsidiary, Intact Acquisition Co. Ltd. ("Merger Sub") will acquire all of the outstanding shares of OneBeacon in an all-cash transaction (the "Proposed Transaction"). If consummated, OneBeacon stockholders will receive $18.10 in cash for each share of OneBeacon stock that they own ("Merger Consideration"). The Proposed Transaction was valued at approximately $1.7 billion at the time of the announcement.

3.      On June 8, 2017, Defendants issued materially incomplete and misleading disclosures in the Schedule 14A Information Statement (the "Proxy Statement") filed with the United States Securities and Exchange Commission ("SEC") in connection with the Proposed Transaction.

4.      Specifically, the Proxy Statement is materially deficient and misleading because, *inter alia*, it fails to disclose material information about the valuation analyses of the Company's financial advisor, Credit Suisse Securities (USA) LLC ("Credit Suisse"), and omits material information with respect to the process and events leading

up to the Proposed Transaction, including material information concerning OneBeacon insiders' potential conflicts of interest. Without this information, OneBeacon stockholders cannot make an informed decision with respect to the Proposed Transaction. The failure to adequately disclose such material information constitutes a violation of §§ 14(a) and 20(a) of the Exchange Act, as stockholders need such information in order to make a fully-informed vote on the Proposed Transaction.

5.     For these reasons and as set forth in detail herein, the Individual Defendants, and the Company, have violated federal securities laws.  Accordingly, Plaintiff seeks to enjoin the Proposed Transaction or, in the event the Proposed Transaction is consummated, recover damages resulting from the Individual Defendants' violations of these laws. Judicial intervention is warranted here to rectify existing and future irreparable harm to the Company's stockholders.

## JURISDICTION AND VENUE

6.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331, pursuant to 15 U.S.C. § 78aa (federal question jurisdiction), as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9 promulgated thereunder

7.     The Court has personal jurisdiction over each of the Individual Defendants because each conducts business in and maintains operations in this District or is an individual who either is present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8.      Venue is proper in this District under § 27 of the Exchange Act, 15 U.S.C. §78aa, as well as pursuant to 28 U.S.C. § 1391, because: (i) the conduct at issue took place and had an effect in this District; (ii) OneBeacon is headquartered in this District and each of the Individual Defendants, and Company officers or directors, either resides in this District or has extensive contacts within this District; (iii) a substantial portion of the transactions and wrongs complained of herein, occurred in this District; (iv) most of the relevant documents pertaining to Plaintiff's claims are stored (electronically and otherwise), and evidence exists, in this District; and (v) defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## PARTIES

9.      Plaintiff is, and has been at all relevant times, the owner of shares of OneBeacon common stock.

10.     Defendant T. Michael Miller ("Miller") is the President and Chief Executive Officer of the Company.  He has been a director of the Company since August 2006, and he has served as President and Chief Executive Officer of the Company since October 2006.

11.     Defendant Lowndes A. Smith ("Smith") has been Chairman of the Board of the Company since October 2006.

12.     Defendant Reid T. Campbell ("Campbell") has been a director of the Company since October 2006.

13.    Defendant Morgan W. Davis ("Davis") has been a director of the Company since 2006.

14.    Defendant Lois W. Grady ("Grady") has been a director of the Company since December 2006.

15.    Defendant Ira H. Malis ("Malis") has been a director of the Company since 2014.

16.    Defendant G. Manning Rountree ("Rountree") was appointed as director of the company on March 6, 2017.

17.    Defendant Patrick A. Thiele ("Thiele") has served as a director of the Company since February 2014.

18.    Defendant Kent D. Urness ("Urness") has been a director of the Company since February 2007.

19.    Defendants Miller, Smith, Campbell, Davis, Grady, Malis, Rountree, Thiele and Urness are collectively referred to as "Individual Defendants" and/or the "Board."

20.    Defendant OneBeacon is a Bermuda-domiciled holding company that is publicly traded on the New York Stock Exchange under the symbol "OB." The Company maintains its U.S. Corporate Headquarters at 605 Highway 169 North, Suite 800, Plymouth, MN 55441. As of March 29, 2017, White Mountains, an exempted Bermuda limited liability company and OneBeacon's parent company, owns all of the Company's Class B common shares, representing 96.9% of the voting power of the Company's voting securities and approximately 75.7% of the Company's outstanding common shares.

21.    The Individual Defendants and OneBeacon are collectively referred to as "Defendants."

## OTHER RELEVANT ENTITIES

22.    Intact, a Canadian corporation, is the leading provider of property and casualty insurance in Canada. The company's principle offices are located at 700 University Avenue, Toronto, Ontario M5G 0A1. Supported by over 12,000 employees, Intact insures more than five million individuals and businesses through its insurance subsidiaries and is the largest private sector provider of property and casualty insurance in British Columbia, Alberta, Ontario, Québec, Nova Scotia and Newfoundland & Labrador.

23.    Holdco is a Bermuda exempted limited liability company and an indirect wholly owned subsidiary of Intact. It was formed solely for the purpose of effecting the merger and the transactions contemplated by the merger agreement and it has not engaged in any other business.

24.    Merger Sub, is a Bermuda exempted limited liability company and a wholly owned subsidiary of Holdco. It was formed solely for the purpose of effecting the merger and the transactions contemplated by the merger agreement and it has not engaged in any other business.

## CLASS ACTION ALLEGATIONS

25.    Plaintiff brings this action individually and as a class action on behalf of all holders of OneBeacon stock who are being, and will be, harmed by Defendants' actions described herein (the "Class").  Excluded from the Class are Defendants herein and any

person, firm, trust, corporation, or other entity related to, controlled by, or affiliated with, any Defendant, including the immediate family members of the Individual Defendant.

26.    This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23.

27.    The Class is so numerous that joinder of all members is impracticable. According to the Proxy Statement, as of June 7, 2017, there were there were 22,986,618 OneBeacon Class A common shares and 71,754,738 OneBeacon Class B common shares outstanding and entitled to vote.  These shares are held by thousands of beneficial holders who are geographically dispersed across the country.

28.    There are questions of law and fact which are common to the Class and which predominate over questions affecting any individual Class member.  The common questions include, inter alia, the following:

      a.    whether Defendants have violated Sections 14 and 20 of the Exchange Act in connection with the Proposed Transaction; and

      b.    whether Plaintiff and the other members of the Class would be irreparably harmed were the transactions complained of herein consummated.

29.    Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class.

30.    Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class.

31.    The prosecution of separate actions by individual members of the Class creates a risk of inconsistent or varying adjudications with respect to individual members of the Class, which could establish incompatible standards of conduct for Defendants.

32.    Plaintiff anticipates that there will be no difficulty in the management of this litigation.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

33.    Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class a whole.

34.    Accordingly, Plaintiff seeks injunctive and other equitable relief on behalf of himself and the Class to prevent the irreparable injury that the Company's stockholders will continue to suffer absent judicial intervention.

## FURTHER SUBSTANTIVE ALLEGATIONS

**Company Background**

35.    OneBeacon is a Bermuda exempted limited liability company with U.S. based underwriting operating company subsidiaries that are property and casualty insurance writers and a Bermuda-based reinsurance company subsidiary, Split Rock Insurance, Ltd. OneBeacon offers a wide range of specialty insurance products and services primarily through independent agencies, regional and national brokers, wholesalers and managing general agencies.

36.    OneBeacon's underwriting companies offer a range of specialty insurance products sold through independent agencies, regional and national brokers, wholesalers

and managing general agencies. Each business is managed by an experienced team of specialty insurance professionals focused on a specific customer group or industry segment, and providing distinct products and tailored coverages and services. OneBeacon's solutions target group accident; architects and engineers; commercial surety; entertainment; environmental; excess property; financial institutions; financial services; healthcare; management liability; ocean and inland marine; programs; public entities; technology; and tuition refund.

37.    OneBeacon's success is best exhibited by the strong growth in value per share, reflecting a 2.8% increase compared to the first quarter of 2016. Additionally, the company stands on firm financial footing as evidenced by its reported comprehensive income of $32.2 million for the first quarter of 2017. This encouraging level of growth and strong underlying metrics reveal a Company that is well suited to enjoy a bright financial outlook and generate significant earnings in the foreseeable future. On May 2, 2017, OneBeacon issued a press release announcing its first quarter 2017 financial results. In describing the rosy financial outlook of the Company, Defendant Miller stated that:

> Most of our businesses delivered strong results, from both a top-line and bottom-line perspective. While overall net written premiums were down 8% compared to last year, that variance was driven by risk-selection refinement in our Programs, Entertainment and Healthcare businesses. In the remainder of our businesses, net written premiums were up 3%. While market conditions remain competitive, our positive first-quarter-momentum positions us well for the balance of the year.

Despite these results, and the fact that OneBeacon is well-positioned, as a stand-alone company, to enjoy a bright financial outlook and generate significant earnings in the foreseeable future, the Board has agreed to a merger with Intact.

38.    In light of OneBeacon's recent and historical financial performance and strong growth prospects, it is vital that OneBeacon's stockholders receive all material information concerning the Proposed Transaction, so that they may make an informed vote on the Proposed Transaction and/or seek appraisal for their stock.

**The Merger Process**

39.    In the fall of 2016, White Mountains, the Company's controlling stockholder, was contacted by an undisclosed third party, referred to in the in the Proxy Statement as "Party A," regarding Party A's interest in a possible strategic transaction with OneBeacon

40.    To assist in these efforts, OneBeacon retained Credit Suisse as OneBeacon's financial advisor and requested that the financial advisor start a preliminary review of, and the initial planning for, a potential process to explore a sale of OneBeacon.

41.    In November 2016, preliminary discussions with Party A terminated following the U.S. elections.

42.    Despite Party A's withdrawal, the Board determined to continue its pursuit of a strategic transaction. On November 16, 2016, the Board met in Bermuda, with representatives of Credit Suisse and OneBeacon's legal advisor, Cravath, Swaine & Moore LLP ("Cravath"), participating. Credit Suisse provided the board with an overview of then current market conditions, and Defendant Miller presented the preliminary work

that OneBeacon management, with the assistance of Credit Suisse, had completed in reviewing and planning a potential sale process.

43.     In the months following the retention of Credit Suisse, the financial advisor and OneBeacon worked closely to evaluate OneBeacon's situation, market environment, and framework for evaluating strategic alternatives. As part of this process, from December 2016 and January 2017, Credit Suisse contacted representatives of 17 entities that had been identified as potential strategic acquirers with a possible interest in, and the financial and regulatory capacity to execute, a potential acquisition of OneBeacon, including Intact and Party A, to gauge such companies' interest in such a transaction. Of the companies contacted, 7 potential buyers entered into nondisclosure agreements ("NDA"). It is unclear whether these NDAs contain standstill provisions that operate to preclude any of the potential acquirers from submitting a topping bid for the Company.

44.     Beginning in December 2016 and continuing through February 2017, Defendant Miller held meetings with six potential acquirers, including Intact, that had been contacted in the process and had requested a meeting with him regarding a potential acquisition of OneBeacon.

45.     In January and February 2017, three of the parties that had previously executed NDAs informed OneBeacon that they were no longer interested in pursuing a potential transaction with OneBeacon. Thereafter, on February 13, 2017, the remaining interested parties, Intact, and the parties referred to in the Proxy Statement as "Party B," "Party C," and "Party D," submitted nonbinding preliminary indications of interest. Prior to the delivery of these nonbinding preliminary indications of interest, the only

information provided to the potential acquirers had been information discussed in the meetings that each party had with Defendant Miller and a Confidential Information Memorandum (the "CIM") containing certain descriptive and nonpublic information about OneBeacon's operation and certain nonpublic financial projections that was sent to the seven potential acquirers in January 2017.

46.    The nonbinding preliminary indications of interest contemplated a purchase price of between $17.13 and $20.00 per share in cash. Intact proposed an indicative purchase price of between $18.00 and $20.00 per share in cash. Party B proposed an aggregate equity valuation that implied an indicative purchase price of $17.13 per share in cash. Party C proposed an indicative purchase price of $20.00 per share, entirely in Party C stock. Party D proposed an indicative purchase price of $18.00 per share.

47.    On February 28, 2017, the Board held a meeting to discuss the various proposals. Following this review, the board determined that all four parties should be invited to proceed to the second round and continue their exploration of a potential acquisition of OneBeacon. The OneBeacon board of directors also established a transaction committee of the board composed of Defendant Miller, Defendant Smith, Defendant Foy, Defendant Campbell, and Defendant Thiele (the "Transaction Committee") and delegated to the Transaction Committee the authority to make certain day-to-day administrative decisions regarding the discussions and negotiations of a potential sale of OneBeacon.

48.    In March 2017, Intact, Party B, Party C, Party D, and the company's respective representatives were provided with access to a virtual data room containing

nonpublic information regarding OneBeacon. Around this time, Credit Suisse sent a second round process letter to Intact, Party B, Party C and Party D, requesting submissions of markups of OneBeacon's forms of merger agreement and voting agreement with the White Mountains shareholders by March 29, 2017, and submissions of final proposals by April 4, 2017. Over the next few weeks, representatives of OneBeacon responded to due diligence requests from all four parties.

49. On March 10 and March 20, 2017, Party D and Party C, respectively, informed the Company that they had decided not to continue pursuing a potential transaction with OneBeacon. Shortly thereafter, in late March 2017, Intact informed Credit Suisse that it could not commit to the high-end of the indicative purchase price submitted in its preliminary indication of interest.

50. On April 4, 2017, Intact, through Goldman Sachs, submitted to Credit Suisse and Cravath markups of the merger agreement and the voting agreement and a nonbinding revised proposal to acquire OneBeacon at a purchase price of $18.00 per OneBeacon share to be paid in cash. Intact's proposal was contingent on White Mountains purchasing the surplus notes in connection with the closing of the merger in an amount equal to the carrying value of such notes as of December 31, 2016. Also on April 4, 2017, Party B submitted a revised proposal to acquire OneBeacon for $16.36 per share in cash.

51. After being notified that White Mountains would not be willing to purchase the surplus notes, on April 10, 2017, Intact orally submitted a revised bid to acquire

OneBeacon at $17.75 per OneBeacon share, after removing the contingency related to the surplus notes.

52.     On April 11, 2017, Party B submitted a revised bid to acquire OneBeacon for $15.59 per share.

53.     Intact revised its own offer a few days later. On April 13 and 14, 2017, Defendant Miller and Charles Brindamour ("Brindamour"), Intact's CEO, held a series of in-person meetings and telephone calls during which Defendant Miller encouraged Brindamour to increase Intact's proposal. During these conversations, Defendant Miller informed Mr. Brindamour that OneBeacon would not agree to any transaction at a purchase price of less than $18.10 per OneBeacon share. Additionally, Intact agreed to increase its proposed purchase price only if OneBeacon agreed to pay a termination fee equal to 5.0% of the Company's equity value, reimburse Intact's expenses up to a cap of 1.0% of OneBeacon's equity value, and reimburse Intact's expenses related to entering into certain hedging transactions up to a cap of $5.0 million. With this framework in place, Intact and OneBeacon agreed to discuss a transaction on such terms for a purchase price of $18.10 per share, without any requirement that OneBeacon sell the Surplus Notes, but with the termination fee and expense reimbursement caps Mr. Brindamour had proposed.

54.     At some point in time following these discussions, the Board authorized Defendant Miller to discuss with Intact issues relating to post-closing employment, a retention bonus pool and the treatment of equity awards in the merger that Intact indicated needed to be resolved prior to signing the merger agreement.

55.     Negotiations between Intact and OneBeacon, and their respective representatives, continued between April 15, 2017 and May 2, 2017 until the agreement was finalized. Meanwhile Credit Suisse had several discussions with Party B and/or its financial advisor to indicate that Party B's revised proposal, consistent with its initial preliminary nonbinding indication of interest, was again the lowest bid received and to further encourage Party B to meaningfully increase its proposal, noting that Party B's markup of the merger agreement contained a number of items requiring negotiation between the parties and that Party B would need to improve its price before proceeding with such negotiations. On May 2, 2017, prior to the OneBeacon board of directors' approval of the agreement with Intact, Party B informed Credit Suisse that Party B would not proceed without specific price guidance and was withdrawing its previously submitted proposal. It is unclear whether OneBeacon communicated to Party B the same guidance that it had previously provided to Intact that OneBeacon would not agree to any transaction at a purchase price of less than $18.10 per OneBeacon share.

56.     On May 2, 2017, OneBeacon's board of directors held a meeting and, following a review of the Merger Agreement and a presentation by Credit Suisse of its financial analysis of the proposed transaction, unanimously determined: that the total consideration payable to the OneBeacon shareholders constitutes fair value and that the merger was fair to and in the best interests of OneBeacon. The board unanimously approved the merger agreement, the statutory merger agreement and the transactions contemplated by the merger agreement and resolved to recommend that the OneBeacon

shareholders approve the merger, the merger agreement and the statutory merger agreement. Intact and OneBeacon executed the merger agreement later that same day.

**The Merger Announcement**

57.    In a press release dated May 2, 2017, OneBeacon announced that it had entered into a Merger Agreement with Intact pursuant to which Intact will acquire all of the outstanding shares of OneBeacon for $18.10 per share.

58.    The press release states in pertinent part:

**HAMILTON, Bermuda (May 2, 2017)** – OneBeacon Insurance Group, Ltd. (NYSE: OB) has entered into a definitive merger agreement under which Intact Financial Corporation (TSX: IFC) will acquire all outstanding OneBeacon shares for $18.10 in cash per share. The $18.10 per share acquisition price is 1.65 times OneBeacon's book value per share as of March 31, 2017, and represents a 14% premium to the company's closing stock price on the NYSE of $15.89 as of May 1, 2017 and a 15% premium to the volume weighted average share price over the last 30 days. This represents aggregate cash consideration of approximately $1.7 billion. In addition, OneBeacon debt of approximately $275 million will remain outstanding.

This transaction will create a North American leader in specialty insurance, with over $1.5 billion annual premiums. Furthermore, it bolsters Intact's Canadian business with new products and cross-border capabilities, and better positions the company to compete with North American insurers.

Mike Miller, CEO of OneBeacon, said, "We are all very excited to join the Intact family. The opportunity to leverage Intact's deep technical, financial and technology capabilities makes this combination the perfect next step in the OneBeacon journey. Together, we will accelerate our pursuit in creating a leading specialty insurer in North America. We look forward to working with our U.S. and Canadian independent agents and brokers to deliver market-leading capabilities to our targeted customers. Both companies are dedicated to ensuring a seamless transition and look forward to profitably growing our specialty portfolio going forward."

Charles Brindamour, CEO of Intact, said, "Today, we've taken an important step in building a world-class P&C insurer. The addition of

OneBeacon is creating a leading North American specialty lines insurer focused on small-to-midsize businesses. OneBeacon is a strong strategic fit for Intact, with deep expertise in commercial and specialty lines and shared values. We see significant growth potential from the combination of our specialty lines operations and we look forward to welcoming OneBeacon employees to the Intact family."

OneBeacon was formed in 2001 when White Mountains Insurance Group, Ltd. acquired the former CGU's U.S. property-casualty business from Aviva plc. In 2006, White Mountains sold 27.6 million of OneBeacon's common shares in an initial public offering, or 27.6% of OneBeacon's common shares at the time of the initial public offering. As of May 2, 2017, White Mountains owned 75.7% of OneBeacon's common shares, representing 96.9% of the voting power. White Mountains has agreed to vote in favor of the transaction.

The transaction, which was unanimously approved by OneBeacon's board of directors, is subject to regulatory and shareholder approvals and other customary closing conditions, and is expected to close in the fourth quarter of this year. OneBeacon expects to continue paying regular quarterly dividends consistent with past practice prior to closing. Completion of the merger is not subject to any financing conditions.

59.    As noted in both the press release and Merger Agreement, OneBeacon's stockholders will have the right to receive, in exchange for each share of OneBeacon common stock, $18.10 per share in cash. However, the consideration to be paid to Plaintiff and the Class in the Proposed Transaction is inadequate because, among other things, the intrinsic value of the Company is materially in excess of the amount offered in the Proposed Transaction.

60.    Here, the Individual Defendants have secured a deal that significantly harms shareholders, as Plaintiff and the Class will lose their right to share proportionately and equitably in the future success of the Company as a standalone entity.

**The Proxy Statement Omits Material Information**

61.    On June 8, 2017, OneBeacon filed a Definitive Proxy Statement with the SEC.  As alleged below and elsewhere herein, the Proxy Statement contains material misrepresentations and omissions of fact that must be cured to allow OneBeacon's stockholders to render an informed decision with respect to the Proposed Transaction.

62.    As discussed below, the Proxy Statements omits material information regarding (i) the sale process leading up to the Proposed Transaction; (ii) potential conflicts of interest relating to OneBeacon directors; and (iii) the valuation analyses prepared by OneBeacon's financial advisor, Credit Suisse, in connection with the rendering of its fairness opinion. This material information directly impacts the Company's expected future value as a standalone entity, and its omission renders the statements made materially misleading and, if disclosed, would significantly alter the total mix of information available to OneBeacon's stockholders.

*Material Omissions Relating to the Sales Process*

63.    With regard to the omission of material information relating to the sale process leading up to the Proposed Transaction, the Proxy Statement states at that the Company entered into a confidentiality agreement with six strategic partners to facilitate the discussion of various potential strategic opportunities. However, details regarding the nature of the confidentiality agreements are worryingly absent from the Proxy Statement. Specifically, the Proxy Statement fails to disclose whether these agreements contained standstill provisions that are still in effect and/or "don't-ask-don't-waive" standstill provisions that are presently precluding these industry participants from making a

topping bid for the Company. Without this information, the Company's stockholders are being misled into assuming that these other industry participants, which were actively interested in acquiring the Company, could make an offer to acquire the Company if they so choose – when they may have been contractually precluded from doing so.

64.    Additionally, in connection with the Proposed Transaction, the Proxy Statement indicates that the Board formed a Transaction Committee composed of Defendant Miller, Defendant Smith, Defendant Foy, Defendant Campbell, and Defendant Thiele, and delegated to the Transaction Committee the authority to make certain day-to-day administrative decisions regarding the discussions and negotiations of a potential sale of OneBeacon. However, the Proxy Statement fails to disclose whether the Transaction Committee formed by the Board has a charter and, if so, the specific duties of the Transaction Committee set forth in the charter. Furthermore, the Proxy Statement also fails to indicate whether the Board ever discussed the ethicality of placing directors affiliated with White Mountains on the Transaction Committee.

65.    The Proxy Statement also fails to disclose a number of details pertaining to the retention bonus pools and the Surplus Notes, both of which were key items in the negotiation process. Specifically, with regard to the retention bonus pools, the Proxy Statement fails to provide any details as to the proposed terms of the retention bonus pools that were shared with the various bidders. Furthermore, despite the fact that Surplus Notes contingencies were included in Party B's April 1, 2017 proposal and Intact's April 4, 2017 proposal, the Proxy Statement fails to provide details relating to these contingencies, including the estimated price of the Surplus Notes if quantified.

66.    Finally, there is a worrying lack of information pertaining to the negotiations relating to Party B. Specifically, it is unclear whether OneBeacon communicated to Party B the same guidance that it had previously provided to Intact that OneBeacon would not agree to any transaction at a purchase price of less than $18.10 per OneBeacon share.

67.    The omission of this information renders statements in the "Background of the Merger" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

### Material Omissions Concerning Insiders' Potential Conflicts of Interest

68.    With regard to potential conflicts of interest, the Proxy Statement fails to disclose material information pertaining to potential conflicts of interest faced by OneBeacon management and the Board. Under the Proxy Statement section entitled "New CEO Arrangement," the Proxy Statement states that "Intact and Mr. Miller have agreed upon certain terms regarding Mr. Miller's terms of employment following the merger, which will be memorialized in an employment agreement." This arrangement is reiterated in the press release wherein Defendant Miller is quoted saying that "We are all very excited to join the Intact family," and Intact's CEO Brindamour is quoted as saying "[w]e see significant growth potential from the combination of our specialty lines operations and we look forward to welcoming OneBeacon employees to the Intact family." However the Proxy Statement fails to disclose all employment related discussions and negotiations that occurred between Intact and OneBeacon's executive officers, including Defendant Miller, nor does it disclose whether any of Intact's prior

proposals or indications of interest referenced management retention or the potential for Board members to sit on the combined company's board of directors.

69.      Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders. The omission of this information renders statements in the "Background of the Merger" section and "New CEO Arrangement" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning the Valuation Analyses Prepared by Credit Suisse***

70.      The Proxy Statement also fails to disclose critical information concerning OneBeacon's managements' projections, as utilized by Credit Suisse in its financial analyses, and the opinions and analysis of Credit Suisse, on which the Board purportedly relied. This omitted information, if disclosed, would significantly alter the total mix of information available to OneBeacon's stockholders that they would rely upon in deciding how to vote on the Proposed Transaction.

71.      With regard to OneBeacon's managements' projections, as utilized by Credit Suisse in its financial analyses, the Proxy Statement fails to disclose the amount of capital required to support a targeted "Best's Capital Adequacy Ratio" plus an estimated safety margin that were subtracted from the Company's GAAP capital to derive the

estimated distributable cash flows to stockholders. The Proxy Statement further fails to disclose the "Best's Capital Adequacy Ratio" that was targeted.

72.     Additionally, the Proxy Statement describes Credit Suisse's fairness opinion and the various valuation analyses it performed in support of its opinion. However, the description of Credit Suisse's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses.

73.     Specifically, with regard to *Selected Public Companies Analysis*, the Proxy Statement fails to disclose the individual multiples for each of the selected public companies analyzed by Credit Suisse, as well as the financial performance metrics for each selected company.

74.     Furthermore, with regard to *Selected Precedent Transaction Analysis*, the Proxy Statement fails to disclose the individual multiples for each of the selected transactions analyzed by Credit Suisse, as well as any benchmarking analyses Credit Suisse performed for OneBeacon in relation to the target companies.

75.     Finally, in connection with Credit Suisse's *Dividend Discount Analysis*, the Proxy Statement fails to disclose (i) the inputs used to derive the range of discount rates of 5.0% to 7.5%; (ii) Credit Suisse's basis for applying book value multiples ranging from 1.30x to 1.70x; and (iii) the implied perpetuity growth rates resulting from the analysis; and (iv) the calculated terminal values for OneBeacon.

76.     The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to OneBeacon's stockholders. Accordingly, based on the foregoing disclosure deficiencies in the Proxy Statement, Plaintiff seeks

injunctive and other equitable relief to prevent the irreparable injury that Company stockholders will suffer, absent judicial intervention, if OneBeacon's stockholders are required to vote on the Proposed Transaction without the above-referenced material misstatements and omissions being remedied.

## CLAIMS FOR RELIEF

### COUNT I
**Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder**

77.    Plaintiff repeats and realleges each allegation set forth herein.

78.    As detailed herein, Defendants disseminated the false and misleading Proxy Statement specified above, which contained statements which, at the time and in the light of the circumstances under which they were made, were false and misleading with respect to material facts and which omitted to state material facts necessary in order to make the statements therein not false or misleading or necessary to correct earlier statements which had become false or misleading, in violation of Section 14(a) of the Exchange Act and SEC Rules promulgated thereunder, including SEC Rule 14a-9.

79.    By the use of the mails and by means and instrumentalities of interstate commerce and the facility of a national securities exchange, Defendants solicited and permitted the use of their names to solicit proxies or consents or authorizations in respect of the common stock of OneBeacon.

80.    By virtue of their positions within the Company, the Individual Defendants were aware of this information and of their duty to disclose this information in the Proxy Statement. The Proxy Statement was prepared, reviewed, and/or disseminated by

Defendants. The Proxy Statement misrepresented and omitted material facts, including material information about the unfair sale process for the Company, the unfair consideration offered in the Proposed Transaction, and the actual intrinsic value of the Company's assets. Defendants were at least negligent in filing and disseminating the Proxy Statement with these materially false and misleading statements and omissions. Defendants have also failed to correct the Proxy Statement and the failure to update and correct false statements is also a violation of Section 14 of the Exchange Act and SEC Rules promulgated thereunder.

81.     The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding whether to vote in favor of and tender their shares in the Proposed Transaction. A reasonable investor would view a full and accurate disclosure as significantly altering the "total mix" of information made available in the Proxy Statement and in other information reasonably available to stockholders.

82.     Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from immediate and irreparable injury, which defendants' actions threaten to inflict.

## COUNT II
### Against the Individual Defendants for Violation of Section 20(a) of the Exchange Act

83.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

84. The Individual Defendants acted as controlling persons of OneBeacon within the meaning of Section 20(a) of the Exchange Act, as alleged herein. By virtue of their positions as officers and directors of OneBeacon and their participation in and awareness of the Company's business and operations and their intimate knowledge of the materially false statements and omissions contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

85. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be false and misleading prior to or shortly after these statements were issued and had the ability to prevent the issuance of the statements or to cause the statements to be corrected.

86. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. Among other things, the Proxy Statement at issue contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. Thus, they were directly involved in the making of that document.

87. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the

various issues and information that they reviewed and considered – descriptions which had input from the Individual Defendants.

88.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against defendants jointly and severally, as follows:

(A)     declaring this action to be a class action and certifying Plaintiff as the Class representatives and his counsel as Class counsel;

(B)     declaring that the Recommendation Statement is materially false or misleading;

(C)     enjoining, preliminarily and permanently, the Proposed Transaction;

(D)     in the event that the transaction is consummated before the entry of this Court's final judgment, rescinding it or awarding Plaintiff and the Class rescissory damages;

(E)     directing that Defendants account to Plaintiff and the other members of the Class for all damages caused by them and account for all profits and any special benefits obtained as a result of their breaches of their fiduciary duties.

(F)     awarding Plaintiff the costs of this action, including a reasonable allowance for the fees and expenses of Plaintiff's attorneys and experts; and

(G)     granting Plaintiff and the other members of the Class such further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.


Dated:  June 14, 2017                    Respectfully submitted,

                                         **HELLMUTH & JOHNSON, PLLC**

                                         By _____*s/Russell M. Spence, Jr.*_____
                                         Russell M. Spence, Jr. #241052
                                         8050 West 78th Street
                                         Edina, MN 55439
                                         952.941.4005
                                         mspence@hjlawfirm.com

                                         *Attorney for Plaintiff*

                                         LEVI & KORSINSKY LLP
                                         Donald J. Enright (to be admitted *pro hac vice*)
                                         Elizabeth K. Tripodi (to be admitted *pro hac vice*)
                                         1101 30th Street, N.W., Suite 115
                                         Washington, D.C. 20007
                                         Telephone: (202) 524-4290
                                         Facsimile: (202) 333-2121
                                         Email: denright@zlk.com
                                                 etripodi@zlk.com

                                         *Attorney for Plaintiff*